UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
DAWAIN DAVIS, LUKE LAPOMP, and
JOSHUA MORRIS, on behalf of themselves
and all others similarly-situated,

                                           Case No.: 22-cv-01936

                    Plaintiffs,

           -against-                              **COMPLAINT**

T&T EXPRESS SHIPPING, LLC,
and DALE MILLER, individually,

                    Defendants.
----------------------------------------------------------------X

        Plaintiffs DAWAIN DAVIS ("Plaintiff Davis"), LUKE LAPOMP ("Plaintiff Lapomp"),

and JOSHUA MORRIS ("Plaintiff Morris"), on behalf of themselves and all others similarly

situated, by their attorneys, Bell Law Group, PLLC, as and for their Complaint against T&T

EXPRESS SHIPPING, LLC ("Defendant T&T") and DALE MILLER, individually ("Defendant

Miller") (referred to collectively herein as "Defendants"), respectfully allege upon knowledge as

to themselves and upon information and belief as to all other matters as follows:

## NATURE OF THE ACTION

        1.     This action is brought by Plaintiffs pursuant to the Fair Labor Standards Act

("FLSA") and New York Labor Law ("NYLL"), on behalf of themselves, and all others similarly

situated, to seek redress against Defendants for systematic and class-wide failure by Defendants

to provide the required minimum wage and overtimes wages, as well as for the failure to provide

wage payment statements and wage theft prevention act notifications in violation of the FLSA and

NYLL.

        2.     Plaintiffs worked for Defendants - - a shipping and freight forwarding business that

handles the packing, shipping, and delivering of parcels domestically and internationally, and its

day-to-day overseer - - at various times throughout the past six years.  During their employment, Defendants required Plaintiffs to work, and Plaintiffs indeed did work, at least forty hours per week and frequently more than 40 hours per week while being paid a flat daily rate in cash. However, Defendants failed to pay Plaintiffs at least the minimum wage rate for hours worked in a week up to forty in violation of the NYLL and failed to pay Plaintiffs at a rate of one and one half the minimum wage rate for hours worked in a week over forty in violation of the FLSA and the NYLL.  Moreover, Plaintiffs did not receive accurate wage theft prevent act notification at the time of hiring and did not receive wage payments statements each week in violation of the NYLL.

## JURISDICTION AND VENUE

3.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331, in that this is an action arising under the FLSA.

4.     This Court has supplemental jurisdiction of the claim arising under the NYLL pursuant to 28 U.S.C. § 1367, in that the New York State law claims are so closely related to Plaintiff's FLSA claims as to form the same case or controversy under Article III of the United States Constitution.

5.     Venue is proper in this judicial district under 28 U.S.C. § 1391, as a substantial part of the events and omissions giving rise to the claims occurred in this judicial district, and Defendants conduct significant business within this judicial district.

## PARTIES

6.     At all relevant times, Plaintiffs were and still are residents of the County of Kings, State of New York.

7.     At all relevant times, Plaintiffs have been a covered employee within the meaning of the FLSA, 29 U.S.C. § 201, *et seq.* and NYLL, N.Y. Lab. Law § 190 *et seq.*

8.      At all relevant times, Defendant T&T was and still is a domestic limited liability corporation organized and existing under and by virtue of the laws of the State of New York.

9.      At all relevant times, Defendant T&T was and still is authorized to transact business in the State of New York.

10.      At all relevant times, Defendant T&T was and still is transacting business within the State of New York and maintains its warehouse and principal place of business at 1100 Linwood Street, Brooklyn, New York 11208.

11.      Defendant T&T has designated the following individual and address to receive service of process on its behalf: Patricia Williams located at 472 Sutter Avenue, Brooklyn, New York 11207.

12.      Defendant Miller was and still is a resident of the State of New York.  Throughout Plaintiff's employment, Miller held a position with managerial and/or supervisory authority at Defendant T&T's warehouse located at 1100 Linwood Street, Brooklyn, New York 11208.

13.      Defendant Miller was and still is in active control and management of the Defendant T&T, regulates the employment of persons employed by Defendant T&T, acted directly and indirectly in the interest of Defendant T&T in relation to the employees, and is thus an employer of Plaintiffs under the FLSA and NYLL.

14.      Defendants - - the operator of a shipping and freight forwarding business and its day-to-day overseer - - operate the facility located at 1100 Linwood Street, Brooklyn, New York 11208.

15.      At all relevant times, Defendants have been covered employers within the meaning of the FLSA, 29 U.S.C. § 201, *et seq.* and NYLL, N.Y. Lab. Law § 190 *et seq*., as Plaintiffs' work involved assisting in the shipping of parcels out of state.  Additionally, during that time, Defendant

T&T employed two or more employees and did business across state lines.

16.     Upon information and belief, Defendants have employed over one forty (40) employees over the past six (6) years.

## PLAINTIFF DAVIS' FACTUAL ALLEGATIONS

17.     Plaintiff Davis was hired by Defendants as a shipping coordinator in September 2018 and worked in that role until September 2021.  In this role, Plaintiff Davis assisted in the receiving and sending of parcels that Defendants' customers hired them to ship.

18.     Throughout Plaintiff Davis' employment, Defendant Miller oversaw the day-to-day operations of Defendant T&T's business and was responsible for all personnel decisions regarding the employees working at the Brooklyn facility that Defendant T&T operates.

19.     From his date of hire until December 31, 2020, Plaintiff Davis worked from 9:00 a.m. to at least 5:00 p.m., or sometimes later, Monday through Friday, and occasionally worked additional hours on Saturday, with only a thirty-minute lunch break on these days, for at least forty (40) hours per week.

20.     For example, during the week beginning December 13, 2020, Plaintiff David worked according to the following schedule:

Sunday, December 13, 2020:              Off

Monday, December 14, 2020:              9:00 a.m. – 5:00 p.m.

Tuesday, December 15, 2020:             9:00 a.m. – 5:00 p.m.

Wednesday, December 16, 2020:          9:00 a.m. – 5:00 p.m.

Thursday, December 17, 2020:            9:00 a.m. – 5:00 p.m.

Friday, December 18, 2020:              9:00 a.m. – 5:00 p.m.

Saturday, December 19, 2020:            9:00 a.m. – 2:00 p.m.

21.     From January 1, 2021, until September 2021, Defendants reduced Plaintiff Davis'
weekly hours to approximately four hours per day and five days per week.  Plaintiff Davis worked
according to this schedule until he took a medical leave from work due to an injury in September
2021.

22.     During 2018, Defendants paid Plaintiff Davis weekly, in cash, according to the flat
daily rate of $90 regardless of the number of hours Plaintiff Davis worked in each week.

23.     Defendants did not pay Plaintiff Davis at a rate of one-and one-half times the
minimum wage rate, or his regular hourly rate, for hours worked in a week over forty during this
time.

24.     During 2019, Defendants paid Plaintiff Davis weekly, in cash, according to the flat
daily rate of $95 regardless of the number of hours Plaintiff Davis worked in each week.

25.     Defendants did not pay Plaintiff Davis at a rate of one-and one-half times the
minimum wage rate, or his regular hourly rate, for hours worked in a week over forty during this
time.

26.     During 2020 and 2021, Defendants began paying Plaintiff Davis at an hourly rate
of $13 per hour for all hours worked regardless of the number of hours worked in a week.

27.     Plaintiff Davis was required by the NYLL to be paid a minimum wage rate of no
less than $13.00 per hour from December 31, 2017, through December 30, 2018.

28.     Plaintiff Davis was required by the NYLL to be paid a minimum wage rate of no
less than $15.00 per hour from December 31, 2018, through September 2021.

29.     Defendants regularly failed to pay Plaintiff Davis the required minimum wage
throughout Plaintiff's employment in violation of the NYLL.

30.     Plaintiff Davis was entitled to be paid at least one and one-half times the minimum

wage rate and/or the regular hourly rate of pay, whichever was higher, for each hour in excess of forty (40) hours that Plaintiff Davis worked in any workweek pursuant to the FLSA § 207 and 12 NYCRR 142-2.2.

31.    Throughout Plaintiff Davis' employment, Plaintiff Davis worked in excess of forty (40) hours per workweek and was entitled to receive overtime wages.

32.    At no time was Plaintiff Davis paid overtime wages of one and one-half times the minimum wage rate and/or the regular hourly work rate of pay, whichever was higher, for any hours that Plaintiff Davis worked in excess of forty (40) per workweek, in violation of the FLSA and NYLL.

33.    At all relevant times, Plaintiff Davis was entitled to wage statements indicating the regular and overtime rate of pay; the basis of the rate of pay; the dates covered by the payment; the name, address and phone number of the employer; and itemized allowances and deductions pursuant to NYLL 195(3).

34.    At all relevant times, Plaintiff Davis was entitled to a notice at the time of hiring indicating Plaintiff Davis' rate of pay and the basis thereof, the name of the employer, any doing business as names and the main office or principal place of business pursuant to NYLL 195(1).

35.    Plaintiff Davis was not provided an accurate wage theft prevention act notification at the time of hiring indicating his rate of pay or the basis thereof, nor was he provided accurate wage payment statements reflecting his hourly rate or number of hours worked on each payday while working for Defendants.

36.    Throughout Plaintiff Davis employment with Defendants, he was paid weekly in cash based on a flat daily rate regardless of the number of hours worked in a week.

37.    Each hour that Plaintiff Davis worked was for Defendants' benefit.

## PLAINTIFF LAPOMP'S FACTUAL ALLEGATIONS

38.     Plaintiff Lapomp was hired by Defendants as a warehouse assistant in 2007 and worked in that role until November 1, 2021.  In this role, Plaintiff Lapomp assisted in the receiving and sending of parcels that Defendants' customers hired them to ship.

39.     Throughout the past six years of Plaintiff Lapomp's employment, Defendant Miller oversaw the day-to-day operations of Defendant T&T's business and was responsible for all personnel decisions regarding the employees working at the Brooklyn facility that Defendant T&T operates.

40.     From his date of hire until through the end of 2020, Defendants required Plaintiff Lapomp to work, and he did in fact work, from 9:00 a.m. to at least 5:00 p.m., or sometimes later, Monday through Friday, for at least forty (40) hours per week.

41.     For example, during the week beginning December 16, 2019, Plaintiff Lapomp worked according to the following schedule:

|  |  |
|---|---|
| Sunday, October 25, 2020: | Off |
| Monday, October 26, 2020: | 9:00 a.m. – 6:00 p.m. |
| Tuesday, October 27, 2020: | 9:00 a.m. – 6:00 p.m. |
| Wednesday, October 28, 2020: | 9:00 a.m. – 6:00 p.m. |
| Thursday, October 29, 2020: | 9:00 a.m. – 6:00 p.m. |
| Friday, October 30, 2020: | 9:00 a.m. – 6:00 p.m. |
| Saturday, October 31, 2020: | Off. |

42.     From January 1 to November 1, 2021, Defendants required Plaintiff Lapomp to work, and he did in fact work, from 9:00 a.m. to at least 2:00 p.m., or sometimes later, Monday through Friday, for about twenty-five (25) hours per week.

43.     From his date of hire through the end of 2020, Defendants paid Plaintiff Lapomp weekly, in cash, according to the flat daily rate of $65 regardless of the number of hours Plaintiff Lapomp worked in each week.

44.     Defendants did not pay Plaintiff Lapomp at an hourly rate in accordance with the minimum wage rate mandated by the NYLL during this time for hours worked in a week up to forty.

45.     Defendants did not pay Plaintiff Lapomp at a rate of one-and one-half times the minimum wage rate during this time for hours worked in a week over forty.  At most, he was occasionally paid an extra five dollars per hour for hours worked over forty in a week, but that was not the norm.

46.     During 2021, Defendants began paying Plaintiff Lapomp at an hourly rate of $12/hour, and subsequently at a rate of $15/hour, for all hours worked regardless of the number of hours worked in a week.

47.     Plaintiff Lapomp was required by the FLSA to be paid a minimum wage rate of no less than $7.25 per hour from throughout his employment.

48.     Plaintiff Lapomp was required by the NYLL to be paid a minimum wage rate of no less than $9.00 per hour from December 31, 2014, through December 30, 2015.

49.     Plaintiff Lapomp was required by the NYLL to be paid a minimum wage rate of no less than $9.00 per hour from December 31, 2015, through December 30, 2016.

50.     Plaintiff Lapomp was required by the NYLL to be paid a minimum wage rate of no less than $11.00 per hour from December 31, 2016, through December 30, 2017.

51.     Plaintiff Lapomp was required by the NYLL to be paid a minimum wage rate of no less than $13.00 per hour from December 31, 2017, through December 30, 2018.

52.     Plaintiff Lapomp was required by the NYLL to be paid a minimum wage rate of no less than $15.00 per hour from December 31, 2018, through November 1, 2021.

53.     Defendants regularly failed to pay Plaintiff Lapomp the required minimum wage throughout Plaintiff's employment in violation of the NYLL.

54.     Plaintiff Lapomp was entitled to be paid at least one and one-half times the minimum wage rate and/or the regular hourly rate of pay for each hour in excess of forty (40) hours that Plaintiff Lapomp worked in any workweek pursuant to the FLSA § 207 and 12 NYCRR 142-2.2.

55.     Throughout Plaintiff Lapomp's employment, Plaintiff Lapomp worked in excess of forty (40) hours per workweek and was entitled to receive overtime wages.

56.     At no time was Plaintiff Lapomp paid overtime wages of one and one-half times the minimum wage rate and/or the regular hourly work rate of pay for any hours that Plaintiff Lapomp worked in excess of forty (40) per workweek, in violation of the FLSA and NYLL.

57.     At all relevant times, Plaintiff Lapomp was entitled to wage statements indicating the regular and overtime rate of pay; the basis of the rate of pay; the dates covered by the payment; the name, address and phone number of the employer; and itemized allowances and deductions pursuant to NYLL 195(3).

58.     At all relevant times, Plaintiff Lapomp was entitled to a notice at the time of hiring indicating Plaintiff Lapomp's rate of pay and the basis thereof, the name of the employer, any doing business as names and the main office or principal place of business pursuant to NYLL 195(1).

59.     Plaintiff Lapomp was not provided a wage theft prevention act notification at the time of hiring indicating his rate of pay or the basis thereof, nor was he provided wage payment

statements reflecting his hourly rate or number of hours worked on each payday while working for Defendants.

60.     Throughout Plaintiff Lapomp employment with Defendants, he was paid weekly in cash based on a flat daily rate regardless of the number of hours worked in a week.

61.     Each hour that Plaintiff Lapomp worked was for Defendants' benefit.

## PLAINTIFF MORRIS' FACTUAL ALLEGATIONS

62.     Plaintiff Morris was hired by Defendants as a forklift operator in 2007 and worked in that role until January 2020.  In this role, Plaintiff Morris was tasked with lifting items with the forklift and loading them into container to be shipped to the Caribbean.

63.     Throughout the past six years of Plaintiff Morris' employment, Defendant Miller oversaw the day-to-day operations of Defendant T&T's business and was responsible for all personnel decisions regarding the employees working at the Brooklyn facility that Defendant T&T operates.

64.     From his date of hire until through the end of 2016, Defendants required Plaintiff Morris to work, and he did in fact work, from 9:00 a.m. to at least 6:00 p.m., Monday through Friday, for at least forty-five (45) hours per week.

65.     From the beginning of 2017 through the end of his employment, Defendants required Plaintiff Morris to work, and he did in fact work, from 8:00 a.m. to 5:00 p.m., Monday through Friday, for at least forty-five (45) hours per week.

66.     For example, during the week beginning January 5, 2020, Plaintiff Morris worked according to the following schedule:

Sunday, January 5, 2020:          Off

Monday, January 6, 2020:          8:00 a.m. – 5:00 p.m.

| | |
|---|---|
| Tuesday, January 7, 2020: | 8:00 a.m. – 5:00 p.m. |
| Wednesday, January 8, 2020: | 8:00 a.m. – 5:00 p.m. |
| Thursday, January 9, 2020: | 8:00 a.m. – 5:00 p.m. |
| Friday, January 10, 2020: | 8:00 a.m. – 5:00 p.m. |
| Saturday, January 11, 2020: | Off |

67.     During 2015 and 2016, Defendants paid Plaintiff Morris $72 per day regardless of the number of hours he worked in a day or in a week.

68.     During 2017, Defendants paid Plaintiff Morris $80 per day regardless of the number of hours we worked in a day or in a week.

69.     From 2018 until the end of his employment in January 2020, Defendants paid Plaintiff Morris $92 per day regardless of the number of hours he worked in a day or in a week.

70.     Defendants did not pay Plaintiff Morris at an hourly rate in accordance with the minimum wage rate mandated by the FLSA and/or the NYLL during this time for hours worked in a week up to forty.

71.     Defendants did not pay Plaintiff Morris at a rate of one-and one-half times the minimum wage rate during this time for hours worked in a week over forty.

72.     Plaintiff Morris was required by the FLSA to be paid a minimum wage rate of no less than $7.25 per hour from throughout his employment.

73.     Plaintiff Morris was required by the NYLL to be paid a minimum wage rate of no less than $9.00 per hour from December 31, 2014, through December 30, 2015.

74.     Plaintiff Morris was required by the NYLL to be paid a minimum wage rate of no less than $9.00 per hour from December 31, 2015, through December 30, 2016.

75.     Plaintiff Morris was required by the NYLL to be paid a minimum wage rate of no

less than $11.00 per hour from December 31, 2016, through December 30, 2017.

76.    Plaintiff Morris was required by the NYLL to be paid a minimum wage rate of no less than $13.00 per hour from December 31, 2017, through December 30, 2018.

77.    Plaintiff Morris was required by the NYLL to be paid a minimum wage rate of no less than $15.00 per hour from December 31, 2018, through January 2020.

78.    Defendants regularly failed to pay Plaintiff Morris the required minimum wage throughout Plaintiff's employment in violation of the NYLL.

79.    Plaintiff Morris was entitled to be paid at least one and one-half times the minimum wage rate and/or the regular hourly rate of pay for each hour in excess of forty (40) hours that Plaintiff Lapomp worked in any workweek pursuant to the FLSA § 207 and 12 NYCRR 142-2.2.

80.    Throughout Plaintiff Morris' employment, Plaintiff Morris worked in excess of forty (40) hours per workweek and was entitled to receive overtime wages.

81.    At no time was Plaintiff Morris paid overtime wages of one and one-half times the minimum wage rate and/or the regular hourly work rate of pay for any hours that Plaintiff Lapomp worked in excess of forty (40) per workweek, in violation of the FLSA and NYLL.

82.    At all relevant times, Plaintiff Morris was entitled to wage statements indicating the regular and overtime rate of pay; the basis of the rate of pay; the dates covered by the payment; the name, address and phone number of the employer; and itemized allowances and deductions pursuant to NYLL 195(3).

83.    At all relevant times, Plaintiff Morris was entitled to a notice at the time of hiring indicating Plaintiff Morris' rate of pay and the basis thereof, the name of the employer, any doing business as names and the main office or principal place of business pursuant to NYLL 195(1).

84.    Plaintiff Morris was not provided an accurate wage theft prevention act notification

at the time of hiring indicating his rate of pay or the basis thereof, nor was he provided accurate wage payment statements reflecting his hourly rate or number of hours worked on each payday while working for Defendants.

85.     Throughout Plaintiff Morris' employment with Defendants, he was paid weekly in cash based on a flat daily rate regardless of the number of hours worked in a week.

86.     Each hour that Plaintiff Morris worked was for Defendants' benefit.

## COLLECTIVE ACTION ALLEGATIONS

87.     Plaintiffs bring this action on behalf of himself and all other persons who were or are employed by Defendants pursuant to 29 U.S.C. §216(b).

88.     Employees are "similarly situated" for purposes of FLSA collective wage suits if they are subject to a common policy, plan, or design.

89.     Plaintiffs bring the FLSA claims on behalf of themselves and others similarly situated, namely employees of Defendants who worked in any non-managerial and non-exempt position for the period of time dating back six years from the filing date of this Complaint until the date of final judgment in this matter, and who were not paid a regular hourly rate in accordance with the minimum rate established by the FLSA, and/or was not paid overtime wages for hours worked in excess of forty (40) hours per week (hereinafter referred to as the "Davis Collective").

90.     Upon information and belief, the Davis Collective includes at least one additional member beyond the Plaintiffs named herein who are similarly situated individuals who have not been paid overtime wages and who would benefit from the issuance of a court-supervised notice of the lawsuit and the opportunity to join the lawsuit.

91.     Defendants have failed to pay a lawful minimum wage and/or overtime wage to employees other than those in Davis Collective, and Plaintiffs reserve the right to broaden their

definition of the collective group and/or add subgroups to this claim as additional members are discovered.

92.    Defendants acted in the manner described herein so as to maximize their profits while minimizing their labor costs and overhead.

93.    Defendants are liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiffs and others similarly situated.

94.    Those similarly situated potential collective members are known to Defendants, are readily identifiable, and can be located through Defendants' records.

## CLASS ACTION ALLEGATIONS

95.    Plaintiffs bring the state law claims on behalf of themselves and other similarly situated as a representative of a class of all non-exempt workers employed by Defendants within the six years prior to the filing of this complaint.

96.    Pursuant to Rule 23 of the Federal Rules of Civil Procedure, for purposes of the state law claims, Plaintiffs seek the certification of a class of all persons who, during the time period dating back six years from the filing date of this Complaint until the date of final judgment in this matter, have been employed by Defendants as non-managerial and non-exempt positions; were not paid minimum wage, worked overtime and were not paid one and one-half times the minimum wage rate or hourly rate of pay; were not provided wage payment statements; and were not provided with notices of pay rate upon the commencement of their employment (hereinafter referred to as the "Davis Class").

97.    Upon information and belief, the Davis Class includes approximately forty (40) similarly situated individuals who have not been paid minimum wage, overtime wages, spread of hours wages and who have not received wage payment statements or wage theft prevention act

notifications, and who would benefit from the issuance of a court-supervised notice of the lawsuit and the opportunity to join the lawsuit.

98.    The class is so numerous as to make it impracticable to join all members of the class as Plaintiffs.

99.    There are questions of law and fact common to all members of the class and those questions predominate over any question affecting only individual class members. Defendants have acted on grounds generally applicable to all class members, in that Defendants' acts and omissions constitute a violation of the wage laws of the State of New York.

100.    Common questions of law and fact include, but are not limited to, the following:

A.    Whether Defendants have consistently failed to pay Plaintiffs and class members the applicable minimum wage as required by the NYLL;

B.    Whether Defendants have consistently failed to pay Plaintiffs and class members overtime wages at one and one-half times the minimum wage rate set by the NYLL or their regular rate of pay, whichever was higher, as required by the NYLL;

C.    Whether Defendants failed to provide Plaintiffs and class members with accurate wage payment statements as required by the NYLL;

D.    Whether Defendants have failed to provide Plaintiffs and class members proper notice of their rate of pay and basis thereof at the time of hire as required by the NYLL; and

E.    Whether Defendants have, in failing to make required payments to Plaintiffs and others similarly situated, acted willfully and with the intent of depriving members of the class of such compensation.

101.    Plaintiffs' minimum wage, overtime wages, wage payment statements, and wage rate notification claims and Defendants' anticipated affirmative defenses thereto are typical of the claims of and against all class members.

102.    Plaintiffs will fairly and adequately protect the interests of all class members in the prosecution of this action and in the administration of all matters relating to the claims of the class. Plaintiffs are similarly situated with, and have suffered similar violations and damages as, the members of the class Plaintiffs seek to represent.

103.    Plaintiffs have retained counsel capable of handling class action suits. Neither Plaintiffs nor their counsel have an interest which is in conflict with the class, or which might cause them not to vigorously pursue this action.

104.    Pursuant to F.R.C.P. 23(b)(1), class certification is appropriate here because the prosecution of separate actions by class members could result in either inconsistent adjudications establishing incompatible pay practices or could as a practical matter dispose of the legal claims of class members not parties to such separate adjudications.

105.    Pursuant to F.R.C.P. 23(b)(3), class certification is appropriate here because questions of law or fact common to members of the class predominate over any questions affecting only individual members and because a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

## CLASS AND COLLECTIVE-WIDE FACTUAL ALLEGATIONS

106.    Plaintiffs and members of the Davis Class and Davis Collective defined above (collectively, "Davis Group") have been victims of a common policy and plan perpetrated by Defendants that has violated their rights under the FLSA and NYLL by denying them pay,

including minimum wage, overtime wages, and failing to provide them with wage payment statements and hiring wage rate notifications.

107.    As part of its ongoing business practice, Defendants have intentionally, willfully, and repeatedly harmed Plaintiffs and the Davis Group by violating the FLSA and/or the NYLL.

108.    Defendants have substantially benefitted and profited from the work that Plaintiffs and Davis Group have performed.

109.    Defendants failed to keep accurate records of the hours worked by the Plaintiffs and the Davis Group.

110.    Defendants' unlawful conduct, policies and practices have been widespread, repeated, and consistent.

111.    Defendants' conduct, policies, and practices as described herein are ongoing and continuing.

112.    Defendants' conduct, policies and practices have been intentional, willful, and in bad faith, and has caused significant damages to the Plaintiffs and the Davis Group.

<u>**AS AND FOR THE FIRST CAUSE OF ACTION**</u>
*Minimum wage owed pursuant to the NYLL*

113.    Plaintiffs repeat and reallege each and every allegation in the preceding paragraphs with the same force and effect as if fully set forth herein.

114.    At all relevant times, Plaintiffs and the Davis Class were employees and Defendants were employers within the meaning of NYLL §§ 190, 651 and 652.

115.    At all relevant times, Defendants were subject to the minimum wage provisions of Article 19 of the NYLL.

116.    Pursuant to NYLL § 652, Defendants were required to pay Plaintiffs and the Davis Class a minimum wage rate of no less than $9.00 per hour from December 31, 2014, through

December 30, 2015.

117.    Pursuant to NYLL § 652, Defendants were required to pay Plaintiffs and the Davis Class a minimum wage rate of no less than $9.00 per hour from December 31, 2015, through December 30, 2016.

118.    Pursuant to NYLL § 652, Defendants were required to pay Plaintiffs and the Davis Class a minimum wage rate of no less than $11.00 per hour from December 31, 2016, through December 30, 2017.

119.    Pursuant to NYLL § 652, Defendants were required to pay Plaintiffs and the Davis Class a minimum wage rate of no less than $13.00 per hour from December 31, 2017, through December 30, 2018.

120.    Pursuant to NYLL § 652, Defendants were required to pay Plaintiffs and the Davis Class a minimum wage rate of no less than $15.00 per hour from December 31, 2018 through current day.

121.    Defendants have engaged in a pattern, practice, policy and/or common scheme of failing to pay Plaintiffs and the Davis Class the applicable minimum wage for any of the hours they required Plaintiffs and the Davis Class to work.

122.    Defendants have violated NYLL § 652 by failing to compensate Plaintiffs and the Davis Class the applicable minimum hourly wage.

123.    As a result of Defendants' violations of the law and failure to pay Plaintiffs and Davis Class the required minimum wage, Plaintiffs and the Davis Class have been damaged and are entitled to recover from Defendants all wages due, along with all reasonable attorneys' fees, interest, and costs, pursuant to NYLL §§ 198 and 663.

124.    Defendants willfully, knowingly, and intentionally failed, and continues to fail to

compensate Plaintiffs and Davis Class the required minimum wage.

125.    Defendants have not made a good faith effort to comply with the NYLL with respect to the compensation of Plaintiffs and the Davis Class.

126.    Due to Defendants' intentional and willful failure to pay Plaintiffs and the Davis Class the applicable minimum wage, Plaintiffs and the Davis Class are entitled to additional liquidated damages equal to one hundred percent of the total amount of wages due, pursuant to NYLL §§ 198 and 663.

### AS AND FOR THE SECOND CAUSE OF ACTION
*Unpaid overtime wages owed pursuant to the FLSA*

127.    Plaintiffs repeat and reallege each and every allegation in the preceding paragraphs with the same force and effect as if fully set forth herein.

128.    At all relevant times, Plaintiffs and the Davis Collective were employees of the Defendants within the meaning of 29 U.S.C. § 203(e).

129.    At all relevant times, Defendants employed Plaintiffs and the Davis Collective within the meaning of 29 U.S.C. § 203(g).

130.    At all relevant times, Defendants were engaged in commerce and/or the production or sale of goods for commerce within the meaning of 29 U.S.C. §§ 203(e), (m), and 206(a).

131.    At all relevant times, Defendants ship parcels out of New York State, and thus subjects Defendants to the requirements of the FLSA.

132.    At all relevant times, Defendants were subject to the overtime wage requirements set forth in the FLSA, 29 U.S.C. §§ 201 *et seq*.

133.    Pursuant to the FLSA and the NYLL, non-exempt employees are required to be paid one and one-half times the employees' regular rate of pay for any hours in excess of forty (40) worked in any workweek.

134.    Plaintiffs and the Davis Collective were entitled to be paid one and one-half times the minimum wage rate and/or Plaintiffs and the Davis Collective's regular hourly rate for any hours worked in excess of forty (40) hours in any workweek.

135.    Defendants required Plaintiffs and the Davis Collective to work more than forty (40) hours a week, and Plaintiffs and the Davis Collective regularly worked more than forty (40) hours a week throughout their employment.

136.    At no time have Defendants paid Plaintiffs and the Davis Collective a rate of one and one-half times the minimum wage rate and/or Plaintiffs and the Davis Collective's hourly rate of pay for all of the hours Plaintiffs and the Davis Collective worked in excess of forty (40) hours per week.

137.    Defendants willfully, knowingly and intentionally did not compensate Plaintiffs and the Davis Collective for overtime at a rate of one and one-half times Plaintiffs and the Davis Collective's hourly rate of pay for all of the hours Plaintiffs and the Davis Collective worked in excess of forty (40) hours per week.

138.    As a result of Defendants' violations of the law and failures to pay Plaintiffs and the Davis Collective required regular and overtime wages, Plaintiffs and the Davis Collective have been damaged and are entitled to recover from Defendants all wages due, along with all reasonable attorneys' fees, interest, and costs, pursuant to 29 U.S.C. § 216(b).

139.    As Defendants did not have a good faith basis to believe that their failure to pay overtime wages to Plaintiffs and the Davis Collective was in compliance with the law, Plaintiffs and the Davis Collective are entitled to additional damages equal to one hundred percent of the total amount of wages due, pursuant to 29 U.S.C. § 216(b).

140.    Members of the Davis Collective are entitled to collectively participate in this action by choosing to "opt-in" and submit written Consents to Join this action pursuant to 29 U.S.C. § 216(b).

## AS AND FOR THE THIRD CAUSE OF ACTION
*Unpaid overtime wages owed pursuant to the NYLL*

141.    Plaintiffs hereby repeat and re-allege each and every allegation as contained in each of the preceding paragraphs as if fully set forth and contained herein.

142.    At all relevant times, Defendants was subject to the overtime wage requirements set forth in Article 19 of the NYLL.

143.    Pursuant to NYLL § 650 *et seq*. and 12 NYCRR 142-2.2, non-exempt employees are required to be paid one and one-half times the employees' regular rate of pay for any hours in excess of forty (40) worked in any workweek.

144.    Plaintiffs and the Davis Class were entitled to be paid one and one-half times the minimum wage rate and/or Plaintiffs and the Davis Class' regular hourly rate for any hours in excess of forty (40) worked in any workweek.

145.    Defendants required Plaintiffs and the Davis Class to work more than forty (40) hours a week, and Plaintiffs and the Davis Class regularly worked more than forty (40) hours a week throughout their employment.

146.    At no time have Defendants paid Plaintiffs and the Davis Class a rate of one and one-half times the minimum wage rate and/or Plaintiffs and the Davis Class' hourly rate of pay for all of the hours they worked in excess of forty (40) hours per week.

147.    Defendants willfully, knowingly, and intentionally did not compensate Plaintiffs and the Davis Class for overtime at a rate of one and one-half times their hourly rate of pay for all of the hours they worked in excess of forty (40) hours per week.

148.     As a result of Defendants' violations of the law and failures to pay Plaintiffs and the Davis Class required regular and overtime wages, Plaintiffs and the Davis Class have been damaged and are entitled to recover from Defendants all wages due, along with all reasonable attorneys' fees, interest, and costs, pursuant to NYLL § 198 and 12 NYCRR § 142-2.2.

149.     As Defendants did not have a good faith basis to believe that their failure to pay overtime wages to Plaintiffs and the Davis Class was in compliance with the law, Plaintiffs and the Davis Class are entitled to additional damages equal to one hundred percent of the total amount of wages due, pursuant to NYLL§ 198.

**AS AND FOR THE FOURTH CAUSE OF ACTION**
*Violation of NYLL § 195(3) Wage Statements*

150.     Plaintiffs hereby repeat and re-allege each and every allegation as contained in each of the preceding paragraphs as if fully set forth and contained herein.

151.     Pursuant to NYLL § 195(3), employers are required to furnish accurate wage statements to their employees with every payment of wages.

152.     Defendants failed to furnish accurate wage statements to Plaintiffs and the Davis Class in violation of NYLL § 195(3) by, *inter alia*, failing to provide Plaintiffs and the Davis Class with accurate statements of their full wages, hours worked, regular rate of pay, overtime rate of pay or other information required by NYLL § 195(3).

153.     The foregoing conduct of Defendants constitutes willful violations of the NYLL and/or its regulations.

154.     As Defendants failed to provide proper wage payment statements under NYLL 195(3), Plaintiffs and the Davis Class are entitled to liquidated damages of $250.00 for each day that such violations occurred, up to a total of $5,000, together with attorneys' fees, costs, and interest.

## AS AND FOR THE FIFTH CAUSE OF ACTION
*Violation of NYLL § 195(1) Wage Theft Prevention Act Notification*

155.    Plaintiffs hereby repeat and re-allege each and every allegation as contained in each of the preceding paragraphs as if fully set forth and contained herein.

156.    NYLL § 195(1) requires employers to furnish employees at the time of hiring, a notice of the rate or rates of pay and basis thereof, the name of the employer, any doing business as names and the main office or principal place of business.

157.    Defendants failed to furnish such a statement to Plaintiffs and the Davis Class in violation of NYLL § 195(1) by, *inter alia*, failing to provide Plaintiffs and the Davis Class at the time of hiring with an accurate statement of Plaintiff's regular rate of pay, the basis thereof, and other information required by NYLL § 195(1).

158.    The foregoing conduct of Defendants constitutes willful violations of the NYLL and/or its regulations.

159.    As Defendants failed to provide Plaintiffs and the Davis Class with proper a proper notice under NYLL 195(1), Plaintiffs and the Davis Class are entitled to liquidated damages of $50.00 for each day that such violations continued, up to a total of $5,000.00, together with all reasonable attorneys' fees, costs, and interest.

**WHEREFORE**, Plaintiffs, on behalf of themselves and all other similarly situated persons, seek the following relief:

A.    That, at the earliest time possible, Plaintiffs be allowed to give notice of this collective action, or that the Court issue such notice, to the Davis Collective. Such notice shall inform the Davis Collective that this civil action has been filed, of the nature of the action, and of their right to join this action;

B. Certification of the Davis Class pursuant to Rule 23 of the Federal Rules of Civil Procedure; designation of Plaintiffs as class representatives; designation of Plaintiffs' counsel as class counsel; and a reasonable incentive payment to Plaintiffs;

C. On the First Cause of Action on behalf of Plaintiffs and eligible Davis Group members against Defendants, for all wages due, an additional award of one hundred percent of all wages, along with all reasonable attorneys' fees, costs and interest, in an amount to be determined by this Court but greater than the jurisdictional minimum;

D. On the Second Cause of Action on behalf of Plaintiffs and eligible Davis Group members against Defendants, for all overtime wages due, an additional award of one hundred percent of all wages, along with all reasonable attorneys' fees, costs and interest, in an amount to be determined by this Court but greater than the jurisdictional minimum;

E. On the Third Cause of Action on behalf of Plaintiffs and eligible Davis Group members against Defendant, for all overtime wages due, an additional award of one hundred percent of all wages, along with all reasonable attorneys' fees, costs and interest, in an amount to be determined by this Court but greater than the jurisdictional minimum;

F. On the Fourth Cause of Action on behalf of Plaintiffs and eligible Davis Group members against Defendants for failing to provide proper statements with every payment of wages, liquidated damages in the amount of $250.00 per day for every work week in which the violation occurred, up to a maximum of $5,000.00, along with all reasonable attorneys' fees, costs and interest, in an amount to be determined by this Court but greater than the jurisdictional minimum;

G. On the Fifth Cause of Action on behalf of Plaintiffs and eligible Davis Group members against Defendants for failing to provide a proper notice at the time of hiring of the rate of pay and basis thereof in an amount of $50.00 per day, up to a maximum of $5,000.00, along with all reasonable attorneys' fees, costs and interest.

H. Such other and further relief as is just and proper.

Dated: Syosset, New York
       March 8, 2022

Respectfully submitted,
BELL LAW GROUP, PLLC

By: */s/ Frank J. Tantone*
Frank J. Tantone, Esq.
*Attorneys for Plaintiffs*
100 Quentin Roosevelt Boulevard, Suite 208
Garden City, New York 11530
(516) 280-3008
ft@Belllg.com