

**Bell Law Group, PLLC**
116 Jackson Avenue
Syosset, New York 11791
T (516) 280-3008
F (516) 706-4692
BellLG.com

January 31, 2024

**Via ECF**
The Hon. Stewart D. Aaron, U.S.M.J.
United States Magistrate Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

      **Re:**    **Davis, et. al. v. T&T Express Shipping, LLC, et. al.,**
            **SDNY Docket No.:  22-cv-01936 (VSB)**

Dear Judge Aaron:

Our office represents the named plaintiffs, Dawain Davis, Luke Lapomp, and Joshua Morris (collectively, "Plaintiffs").  With the consent of defense counsel, Plaintiff now respectfully seeks court approval of the parties' settlement, which provides for a total payment of $15,000 to Plaintiffs (inclusive of attorneys' fees), in accordance with Cheeks v. Freeport Pancake House, Inc., 796 F.3d 199 (2d Cir. 2015).

The parties' finalized settlement agreement is submitted herein as Exhibit A, which includes a Confession of Judgment and a Stipulation of Dismissal.

**I.       Procedural History**

Plaintiffs filed the Complaint on March 8, 2022, alleging that Defendants violated the FLSA and the NYLL by failing to pay Plaintiffs the statutorily prescribed minimum for hours worked in a week over forty, and similarly failed to pay them overtime premiums for all hours worked over forty in a week.  Plaintiffs also claim that Defendants failed to provide them with a wage notice upon hire or a wage statement on any payday.

Defendants filed and served their Answer on June 10, 2022.  Some discovery was exchanged, and a mediation was held but the case did not settle.

On November 2, 2023, the parties participated in a settlement conference with this Court. With this Court's assistance, the parties reached a settlement in principle. The settlement is premised on the understanding that Defendants are facing insolvency. Thereafter, the parties negotiated the terms of a full written agreement, which is now finalized and submitted here as Exhibit A.

The Honorable Stewart D. Aaron, U.S.M.J.
Davis, et. al. v. T&T Express Shipping, LLC, et. al.
January 31, 2024
Page 2 of 6

## II.    Claims and Defenses

*Plaintiff Dawain Davis:* Plaintiff Davis was hired by Defendants in September 2018, and worked in that role until September 2021.  In this role, Plaintiff Davis assisted in the receiving and sending of parcels that Defendants' customers hired them to ship.

From his date of hire until December 31, 2020, Plaintiff Davis worked from 9:00 a.m. to at least 5:00 p.m., or sometimes later, Monday through Friday, and occasionally worked additional hours on Saturday. Plaintiff estimates that he worked approximately 45 hours per week.

From January 1, 2021, until September 2021, Defendants reduced Plaintiff Davis' weekly hours to approximately four hours per day and five days per week.  Plaintiff Davis worked according to this schedule until September 2021, when he left Defendants' place of employment.

Defendants' pay practices violated state and federal law. During 2018, Defendants paid Plaintiff Davis weekly, in cash, according to the flat daily rate of $90 per day regardless of the number of hours Plaintiff Davis worked each week.  During 2019, Defendants paid Plaintiff Davis weekly, in cash, according to the flat daily rate of $95 per day regardless of the number of hours Plaintiff Davis worked in each week.  As a result of the foregoing, Plaintiff Davis' estimated damages are $75,303.00.

*Plaintiff Luke Lapomp:* Plaintiff Lapomp was hired by Defendants as a warehouse assistant in 2007 and worked in that role until November 1, 2021. From his date of hire until the end of 2020, Defendants required Plaintiff Lapomp to work, and he did in fact work, from 9:00 a.m. to at least 5:00 p.m., or sometimes later, Monday through Friday, for at least forty (40) hours per week.

From his date of hire through the end of 2020, Defendants paid Plaintiff Lapomp weekly, in cash, according to the flat daily rate of $65 regardless of the number of hours Plaintiff Lapomp worked in each week in violation of federal and state minimum wage laws.

From January 1 to November 1, 2021, Defendants required Plaintiff Lapomp to work, and he did in fact work, from 9:00 a.m. to at 2:00 p.m., or sometimes later, Monday through Friday, for about twenty-five (25) hours per week.  However, Defendants continued to fail to pay Plaintiff Lapomp lawful wages as his wages fell below minimum wage. As a result of the foregoing, Plaintiff Lapomp's estimated damages are $100,000.00.

*Plaintiff Joshua Morris:* Plaintiff Morris was hired by Defendants as a forklift operator in 2007 and worked in that role until January 2020.  From his date of hire until through the end of 2016, Defendants required Plaintiff Morris to work, and he did in fact work, from 9:00 a.m. to at least 6:00 p.m., Monday through Friday, for approximately forty-five (45) hours per week.

From the beginning of 2017 through the end of his employment, Defendants required Plaintiff Morris to work, and he did in fact work, from 8:00 a.m. to 5:00 p.m., Monday through Friday, for at least forty-five (45) hours per week.

During 2015 and 2016, Defendants paid Plaintiff Morris $72 per day regardless of the number of hours he worked in a day or in a week.  During 2017, Defendants paid Plaintiff Morris

The Honorable Stewart D. Aaron, U.S.M.J.
Davis, et. al. v. T&T Express Shipping, LLC, et. al.
January 31, 2024
Page 3 of 6

$80 per day regardless of the number of hours we worked in a day or in a week. From 2018 until the end of his employment in January 2020, Defendants paid Plaintiff Morris $92 per day regardless of the number of hours he worked in a day or in a week. As a result of the foregoing, Plaintiff Morris' estimated damages are $100,000.00.

*Defendants' Position*

Defendants denied Plaintiffs' claims and asserted multiple defenses. They also asserted that they are insolvent and cannot pay any large verdict or settlement. Defendants were willing to proceed with a consent judgment to avoid additional litigation costs, but with the assistance of the Court, the Parties were able to reach this settlement.

### III.    Settlement Terms

The $15,000 settlement ("Settlement Sum") will be distributed as follows:

|  | Total | BLG | Plaintiff |
|---|---|---|---|
| Mr. Davis | $5,000 | $1,650.00 | $3,350.00 |
| Mr. Lapomp | $5,000 | $1,650.00 | $3,350.00 |
| Mr. Morris | $5,000 | $1,650.00 | $3,350.00 |

The Settlement Sum will be paid to Plaintiffs in five (5) consecutive monthly payments, as follows:

|  | Payment 1 | Payment 2 | Payment 3 | Payment 4 | Payment 5 |
|---|---|---|---|---|---|
|  | *15 days after court approval* | *45 days after court approval* | *75 days after court approval* | *105 days after court approval* | *135 days after court approval* |
| Mr. Davis | $670.00 | $670.00 | $670.00 | $670.00 | $670.00 |
| Mr. Lapomp | $670.00 | $670.00 | $670.00 | $670.00 | $670.00 |
| Mr. Morris | $670.00 | $670.00 | $670.00 | $670.00 | $670.00 |
| BLG | $990.00 | $990.00 | $990.00 | $990.00 | $990.00 |

To ensure that Plaintiffs are paid the full settlement amount, the settlement agreement includes a signed Confession of Judgment by Defendants. See Exhibit A. In the event of a breach, Defendants would owe Plaintiffs up to three times the settlement amount. Id.

### IV.    The Settlement is Fair and Reasonable under the Cheeks Factors

FLSA claims may only be settled and dismissed with prejudice under Rule 41 if they are approved by the Court. Cheeks, 796 F.3d at 206-07. "Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes." Kochilas v. Nat'l

The Honorable Stewart D. Aaron, U.S.M.J.
Davis, et. al. v. T&T Express Shipping, LLC, et. al.
January 31, 2024
Page 4 of 6

Merch. Servs., Inc., 2015 WL 5821631, at *7 (E.D.N.Y. Oct. 2, 2015) (citation omitted). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of settlement." Id. (citation omitted). Furthermore, "[i]f the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved." Id. (citation omitted).

In evaluating the fairness of a proposed settlement of FLSA claims, most courts in this Circuit apply the five-factor test articulated in Wolinsky v. Scholastic, Inc., 900 F. Supp. 2d 332, 335-36 (S.D.N.Y. 2012). The Wolinsky factors consider: (1) the plaintiff's range of possible recovery; (2) the extent to which "the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses"; (3) the seriousness of the litigation risks faced by the parties; (4) whether "the settlement agreement is the product of arm's-length bargaining between experienced counsel"; and (5) the possibility of fraud or collusion.

Here, all of the factors support approving the parties' settlement. Id. *First,* the total settlement amount of $15,000 is reasonable in light of Plaintiffs' potential range of recovery at trial. If Plaintiffs were successful in proving their hours and pay as alleged in the Complaint, they are collectively claiming $275,000 in owed wages under the FLSA and NYLL, inclusive of liquidated damages. However, if Defendants were successful in asserting that Plaintiffs did *not* work the number of work hours they claimed, then Plaintiffs' respective recoveries would be considerably less. Indeed, Defendants continue to assert that Plaintiffs are entitled to little or *no recovery* whatsoever. Thus, a realistic range of recovery for Plaintiffs' FLSA claims was between zero and $275,00.00.

Moreover, Defendants maintain that they are insolvent, and, therefore, even if Plaintiffs were to receive a verdict in excess of what is contemplated in the within settlement, Plaintiffs would not be able to collect on it.

Under this proposed settlement, Plaintiffs will receive a combined total of $15,000 which is 5.5% of their maximum recovery. In light of the unique circumstances of this case – Defendants' insolvency – the outcome here is a highly reasonable one under the FLSA. Indeed, "case law recognizes that potential difficulty in collecting damages militates in favor of finding a settlement reasonable." Lliguichuzhca v. Cinema 60, LLC, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013) (collecting cases). Thus, in Penafiel v. Rincon Ecuatoriano, Inc., the Court approved a settlement of roughly 4% of plaintiffs' best-case recovery. 2015 U.S. Dist. LEXIS 160352, 2015 WL 7736551, at *2 (S.D.N.Y. Nov. 30, 2015). In part, the Court approved that settlement because "plaintiffs ha[d] serious concerns about collectability, which 'militates in favor of finding a settlement reasonable.,'" Id. (quoting Lliguichuzhca, 948 F. Supp. 2d at 365.

Multiple courts have similarly approved settlements upon finding that "given defendants' apparent financial situation, the 'potential difficulty in collecting damages militates in favor of finding a settlement reasonable.'" Ramos v. Amazing Deal of Grand, Inc., No. 22-CV-4746 (JLC), 2023 U.S. Dist. LEXIS 224895, at *1 (S.D.N.Y. Dec. 18, 2023) (citing Lliguichuzhca, 948 F. Supp. 2d at 365); see also Puttre v. Am. Pizza, Inc., No. 23-CV-4705 (JLC), 2023 U.S. Dist. LEXIS 218208, at *2 (S.D.N.Y. Dec. 7, 2023) (same).

*Second,* this settlement agreement will enable the parties to avoid the anticipated burdens of continuing with protracted litigation. Through settlement, Plaintiffs will avoid the stress of contentious litigation and the loss of income associated with taking days off from work in order to attend a deposition and trial – particularly, where as here, the chances of being able to collect on a verdict or settlement is slim.

*Third,* from Plaintiffs' perspective, the prompt payment of the settlement amount is far preferable to continued litigation. As noted above, there are significant factual disputes in the case, particularly around the credibility of each party's position. Moreover, in light of Defendants' financial situation, the chances of being able to collect on a verdict or settlement is slim.

As to the fourth and fifth Cheeks factors, the settlement is clearly the result of arm's length negotiation by zealous advocates. Significantly, the parties were assisted in reaching the settlement by this Court at a Settlement Conference. The assistance of an experienced mediator reinforces that a settlement agreement is non-collusive. See, e.g., Hernandez v. Anjost Corp., 2013 WL 4145952, at *2 (S.D.N.Y. Aug. 14, 2013) ("A settlement like this one, reached with the help of a third-party neutral, enjoys a "presumption that the settlement achieved meets the requirements of due process."). Thus, there was no fraud or collusion here.

## V.    The Non-Monetary Terms are Reasonable

The parties' settlement does not include the types of provisions discussed in Cheeks that contravene FLSA's remedial purposes. Snead v. Interim Healthcare of Rochester, Inc., 286 F. Supp. 3d 546, 553 (W.D.N.Y. 2018). Plaintiff's release of claims is narrowly tailored. Further, the parties' non-disparagement clause is also mutual and makes clear that truthful statements about the nature of the case, the settlement of the case, and the parties' experiences in litigating their claims and defenses, do not constitute disparagement. These provisions reflect compromises made among the parties and are within the guardrails of fairness set out in Cheeks.

## VI.    Plaintiff's Attorneys' Fees are Reasonable

An award of attorneys' fees is also subject to review under Cheeks and must be reasonable. Rainboth-Venditti v. Nat'l Retail Sols, Inc., No. 6:16-CV-137 (ATB), 2018 U.S. Dist. LEXIS 19130, at *2 (N.D.N.Y. Feb. 6, 2018). The Second Circuit courts refer to the Goldberger factors when assessing the reasonableness of attorneys' fees: (1) the time and labor expended by counsel;(2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations. Goldberger v. Integrated Res., Inc., 209 F.3d 43, 50 (2d Cir. 2000).

Here, under the settlement agreement, Plaintiffs' counsel would receive a fee award of $4,950.00, equaling one-third of the Settlement Sum. This amount is consistent with approved fee awards in this Circuit, thereby demonstrating its reasonableness. See Fresno County Employees' Retirement Assoc. v. Isaacson/Weaver Family Trust, 925 F.3d 63, 71 (2d Cir. 2019) (quoting McDaniel v. Cty. of Schenectady, 595 F.3d 411, 419 (2d Cir. 2010)) ("[W]e have previously noted that 'the percentage method has the advantage of aligning the interests of Plaintiff and their attorneys more fully'"); Calle v. Elite Specialty Coatings Plus, Inc., 2014 WL 6621081, at *3

The Honorable Stewart D. Aaron, U.S.M.J.
Davis, et. al. v. T&T Express Shipping, LLC, et. al.
January 31, 2024
Page 6 of 6

(E.D.N.Y. Nov. 21, 2014) ("A one-third contingency fee is a commonly accepted fee in this Circuit.").

Moreover, the reasonableness of Plaintiffs' counsel's requested fee is further solidified by "[a]pplying the lodestar method as a cross check." See Fresno County Employees' Retirement Assoc., 925 F.3d at 72 (citing Goldberger v. Integrated Resources, Inc., 209 F.3d 43, 50 (2d Cir. 2000)).

Here, Plaintiffs' counsel's requested fee is considerably lower than the lodestar amount. Indeed, over the course of the litigation, three attorneys worked on the case – two associates (Laura Reznick and Frank Tantone) and one partner (Chaya Gourarie), who billed for approximately 100 hours in total. See Exhibit B. The associates billed at the rate of $300.00 per hour and the partner billed at the rate of $400.00 per hour. These hourly rates are deemed reasonable in this District. See, e.g., Campos, et al. v. BKUK 3 Corp., No. 18 Civ. 4036, 2021 U.S. Dist. LEXIS 151528, 2021 WL 3540243, at *11 (S.D.N.Y. Aug. 10, 2021) ("Courts in this District have determined in recent cases that a fee in the range of $250 to $450 is appropriate for experienced litigators in wage-and-hour cases.") (collecting cases). See also Leon v. Gazivoda Realty Co., 2019 U.S. Dist. LEXIS 160059, at *6 (S.D.N.Y. Sep. 16, 2019) (approving the rate of $400.00 per hour for the undersigned when she was a senior litigation associate in 2019).

Additionally, two paralegals worked in this case, and billed at the rate of $100.00 per hour, which courts have deemed to be reasonable. See e.g., Long v. HSBC USA Inc., 14 Civ. 6233, 2016 U.S. Dist. LEXIS 124199, 2016 WL 4764939, at *11 (S.D.N.Y. Sept. 13, 2016) ("As to the fees for paralegal work, in recent FLSA actions, hourly rates between $100 and $150 for paralegal work have been found to be reasonable.").

In sum, based on the above time and hourly rates, Plaintiffs' counsel's lodestar is $33,380.00. (Exhibit B). Accordingly, attorneys' fees of $4,950, are significantly below the lodestar, and therefore within the range of attorneys' fees that courts in this Circuit have deemed reasonable.

For the reasons stated above, Plaintiffs respectfully requests that the Court approve the settlement agreement in this case. We thank the Court for its attention to this matter.

Respectfully submitted,

_____
Chaya M. Gourarie